1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DARRYL L. HUBBARD,                      No.  2:11-cv-01568 JAM AC P

12            Plaintiff,

13       v.                                  ORDER AND FINDINGS &
                                             RECOMMENDATIONS
14   C.D. HOUGLAND, et al.,

15            Defendants.

16

17          Plaintiff, a former state prisoner, is proceeding pro se in this action pursuant to 42 U.S.

18   § 1983.  This case proceeds on plaintiff's original complaint, filed June 10, 2011 against

19   defendants S. Clark, L. Goulding, J. Smith, and A. Thompson.  Plaintiff alleges that his Eighth

20   Amendment right to medical care was violated by a delay in treating his fractured rib following

21   the use of force by prison staff on July 7, 2008.  See ECF Nos. 1, 1.  Plaintiff is pursuing a

22   separate civil rights action in this court that presents an Eighth Amendment claim based the

23   alleged use of excessive force on July 7, 2008.  See Case No. 2:09-cv-0939 TLN AC P.

24   I.       The Allegations Of The Complaint

25          On July 7, 2008 at High Desert State Prison,[1] Officers Hougland and McBride used force

26

27   ──────────────────────

28   [1] Hereinafter referred to as "HDSP."

                                             1

against plaintiff. ECF No. 1 at 3.[2]  Two hours after he was injured, at approximately 7:20 p.m., plaintiff was interviewed by defendant Clark, a licensed vocational nurse. Id. at 4.  Plaintiff told Clark that Sgt. Hougland had deliberately broken his rib(s) by repeatedly kneeing plaintiff in the back. Id.  Plaintiff then asked Clark if she could give him something for his pain and, after looking at Sgt. Hougland who shook his head no, she also said no. Id.

Later that evening, plaintiff was interviewed by defendant Thompson, a correctional Sergeant. ECF Nos. 1 at 5, 67-3 at 2.  During the interview, which was videotaped, plaintiff informed Sgt. Thompson that he believed he had a cracked rib. ECF No. 1 at 5.  When plaintiff asked for medical treatment, Sgt. Thompson instructed plaintiff to tell Sgt. Hougland. Id.

When plaintiff was transferred to administrative segregation ("ad-seg") that evening at approximately 9:30 p.m., he informed defendant Officer Smith that he was in severe pain from a broken rib. ECF No. 1 at 6.  Plaintiff also asked Officer Smith for his "carry meds" which contained ibuprofen. Id.  Plaintiff alleges that he did not receive any medicine for his pain, i.e. ibuprofen, until July 12, 2008, five days after his injury. Id. at 8.

On July 21, 2008 plaintiff was interviewed by defendant Goulding, a registered nurse, who informed plaintiff that "there's really nothing we can do about a broken rib(s), but to let them heal." Id. at 8.  Plaintiff requested a second mattress and pillow to make him more comfortable while his fractured rib healed, but that was denied by defendant Goulding who told plaintiff that it would be up to custody staff. Id. at 8.

II.    Motion to Compel Discovery

By Order of June 27, 2013, this court sua sponte modified the scheduling order and extended the discovery deadline to August 15, 2013 and the dispositive motions deadline to October 31, 2013. ECF No. 63.  The same order denied without prejudice plaintiff's earlier motion to compel, subject to its renewal. Id.; see also ECF No. 46 (motion to compel).  The order also directed that any motions necessary to compel discovery must be filed no later than August

---

[2] Plaintiff's specific allegations regarding the use of force are not relevant to the medical care issue.

2

1    15, 2013.[3]

2           On August 22, 2013, plaintiff re-filed his motion to compel with additional exhibits.  ECF

3    No. 73.  The motion is untimely.  Because plaintiff is no longer incarcerated, he is not entitled to

4    the benefit of the prison mailbox rule.[4]  See ECF No. 40 (change of address).  Plaintiff fails to

5    explain the delay in re-filing this motion, or why it took him more than four months to simply

6    photocopy the attachments to the motion even though he was no longer in custody.  For this

7    reason, the court will deny the motion as untimely filed.

8    III.    Motion to Dismiss

9           This court's June 27, 2013 order also denied without prejudice defendants' motion to

10   dismiss or, in the alternative, motion for summary judgment, subject to its renewal with a proper

11   Wyatt warning.  ECF No. 63 at 2.  On August 7, 2013, defendants re-filed this motion along with

12   warnings pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003), and Rand v.

13   Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998).  ECF Nos. 66-70.  Plaintiff filed his opposition

14   on August 14, 2013.  ECF No. 72.  Defendants did not file a reply.  Each motion is therefore fully

15   briefed and will be addressed in turn by the court.

16       A.   Defendants' Motion To Dismiss For Nonexhaustion

17           In the motion, defendants assert that the complaint should be dismissed in its entirety

18   because plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation

19   Reform Act (PLRA).  ECF No. 66.  Defendants specifically contend that plaintiff has never filed

20   an administrative grievance complaining that the particular prison officials named in this action

21   denied or delayed his access to medical care for a fractured rib.  While defendants acknowledge

22

23   [3] A review of this court's docket indicates that plaintiff's service copy of this order was returned
     as undeliverable on July 9, 2013, which indicates that plaintiff was not at the address provided.
24   Pursuant to Local Rule 182(f), plaintiff is under a continuing duty to keep the court informed of
     any change of address.  "Absent such notice, service of documents at the prior address of the
25   attorney or pro se party shall be fully effective."  Id.  Plaintiff has not filed a change of address
     with this court since October 10, 2012.  ECF No. 40.  However, he did file a motion for electronic
26   filing via CM/ECF on October 22, 2012.  ECF No. 43.  Since it appears that plaintiff is no longer
     in custody and has requested to participate in CM/ECF, the court will grant plaintiff's motion to
27   electronically file all pleadings pursuant to Local Rule 133(b)(2).
     [4] Even if the prison mailbox rule applied, the motion would still be untimely because the
28   certificate of service indicates that plaintiff mailed it on August 21, 2013.  ECF No. 73 at 24.

1   that plaintiff filed three grievances with respect to his medical condition after July 7, 2008, they

2   argue that none of these grievances mentioned the defendants or the lack of appropriate medical

3   care for his fractured rib.  ECF No. 66-1 at 6.

4       In support of these claims, defendants submit the affidavit of D. Frazier, the Health Care

5   Appeals Coordinator at High Desert State Prison.  ECF No. 67-9 at 2-3.  Based on a review of

6   plaintiff's health care appeals, there were "only four medical health care appeals… submitted and

7   accepted for review and disposition between 2008 and 2009.  None of the four appeals…

8   contained allegations of failure to provide medical care following the incident that occurred on

9   July 7, 2008, against Defendants Clark, Smith, Thompson, and Goulding."  Id. at 3.  This

10  affidavit specifically references Health Care Appeal Log Nos. HDP-31-08-16037 and HDP-31-

11  08-16557, which are further described below.  Id.

12      B.  Plaintiff's Opposition to Motion to Dismiss

13      Plaintiff's affidavit states that he filed his first CDC 602 appeal on July 20, 2008, along

14  with the required rights and responsibility statement form, complaining about staff misconduct in

15  the form of deliberate indifference to his medical needs following the July 7, 2008 incident.  ECF

16  No. 72 at 12.  According to plaintiff, he did not receive a response to this appeal.  Id.  Plaintiff

17  filed a second 602 inmate appeal on July 27, 2008 complaining about the medical staff's

18  deliberate indifference to his medical needs.  Id.  Once again, plaintiff alleges that he did not

19  receive a response.  Id.  Plaintiff states as a generalization that he has not received a response to

20  most of his inmate appeals concerning staff misconduct at HDSP, especially those concerning

21  misconduct by Sgt. Hougland.  ECF No. 72 at 12-13.  According to plaintiff, "[c]ustody staff &

22  or [sic] prison officials deliberately discarded these appeals [t]o prevent me from exhausting my

23  administrative remedies."  ECF No. 72 at 2.[5]  Plaintiff cites to a separate civil action in this court

24  in which the defendants' motion to dismiss for failure to exhaust was denied following a remand

25  from the Ninth Circuit based on the alleged discarding of appeal forms by prison staff.  See

26

27  _____

    [5] Plaintiff does not provide copies of the 602s that he declares were submitted and "lost."  The
28  Health Care Services Appeal History for plaintiff, submitted by defendants (ECF No. 76-9 at 5-
    8), includes no such 602s.

1  Hubbard v. Hougland, 2:09-cv-00939 TLN AC (Findings and Recommendation of September 27,

2  2012).

3       In support of his allegations concerning the lack of a response to his staff misconduct

4  complaints, plaintiff submitted declarations from twelve other current and former HDSP inmates

5  attesting to their similar experiences of staff losing inmate appeal forms.  ECF No. 72 at 15-42.

6  Plaintiff also submitted copies of letters that he sent to the Inmate Appeals Branch as well as the

7  Office of Inspector General describing the alleged unfairness in the inmate appeal process at

8  HDSP.  ECF No. 72 at 44-47.  Also submitted by plaintiff were copies of mental health

9  evaluation forms completed at HDSP where plaintiff reported feeling helpless and frustrated with

10  the inmate appeal process.  ECF No. 72 at 49-57.

11     C.  Health Care Appeals

12       A review of the relevant documents attached to defendants' motion as well as plaintiff's

13  opposition reveals the following:

14       Plaintiff filed a health care appeal form on September 29, 2008 complaining that he had

15  not received an x-ray even though "it's been some 85 days" since he had his rib(s) broken" and he

16  still had not seen the doctor.  ECF No. 72 at 105.  In the appeal plaintiff requested to have an x-

17  ray of his ribs and to see the doctor about his bad back.  Id.  This health care appeal was assigned

18  Institution Log No. HDP-31-08-16037.  Id., see also ECF No. 67-9 at 3, 67-9 at 7-8.  At the

19  informal level of review, plaintiff was advised that the x-ray technician reported that the x-ray

20  was conducted on September 5, 2008.  Id.  Plaintiff pursued this appeal to the first formal level

21  because the x-ray was not performed when plaintiff went to the x-ray lab [on September 5th]

22  because "the paper work was incomplete."  Id.  This grievance was granted at the first formal

23  level of review on November 19, 2008 after the x-ray had been re-ordered during an interview

24  with plaintiff on October 21, 2008.  ECF No. 72 at 106.

25       On October 30, 2008, plaintiff filed a health care appeal form requesting to see the doctor

26  to get "some help for my back and ointment for my [dry] skin."  ECF No. 67-1 at 43.  In

27  describing the problem for which he was requesting to see the doctor, plaintiff indicated that he

28  saw the doctor on August 25, 2008 about pain in his lower right back.  Id.  This appeal was

1   assigned Institution Log No. HDP-31-08-16557 and logged as an access to care/M.D.

2   appointment issue.  Id.; see also ECF No. 67-9 at 7.  On November 19, 2008, this appeal was

3   partially granted at the first informal level of review by noting that plaintiff was already

4   scheduled to be seen on the M.D. line.  ECF No. 67-9 at 7.  Plaintiff then appealed to the first

5   formal level of review because his scheduled doctor's appointment for December 10, 2008 "did

6   not happen."  Id.  On January 23, 2009, this appeal was once again partially granted at the first

7   formal level of review by prescribing plaintiff with Motrin for back pain and Eucerin cream for

8   the skin problems.  ECF No 67-9 at 7.

9       In the meantime, plaintiff filed another health care appeal on November 13, 2008.  This

10   appeal was assigned Tracking No. HDSP-HC-11021558.  ECF No. 67-9 at 3, 6.  While the

11   original appeal form is not included in either plaintiff's or defendants' exhibits, the summary of it

12   is provided in the appeal history printout attached to D. Frazier's affidavit.  ECF No. 67-9 at 6.

13   This summary indicates that plaintiff wanted to see the results of his October 24, 2008 chest X-

14   ray.  Id.  This appeal was partially granted at the informal level on November 26, 2008 as plaintiff

15   had a scheduled appointment on the M.D. line on December 12, 2008.  Id.  It was then screened

16   out from review at the first formal level of appeal on December 19, 2008 and returned to plaintiff.

17   Id.

18       D.   The Exhaustion Requirement

19       Pursuant to the Prison Litigation Reform Act ("PLRA"):  No action shall be brought with

20   respect to prison conditions under section 1983 of this title, or any other Federal law, by a

21   prisoner confined in a jail, prison, or other correctional facility until such administrative remedies

22   as are available are exhausted.  42 U.S.C. § 1997e (a); see also Griffin v. Arpaio, 557 F.3d 1117,

23   1119 (9th Cir. 2009); Brown v. Valoff, 422 F.3d 926, 934 (9th Cir. 2005) (quoting Porter v.

24   Nussle, 534 U.S. 516, 525 n.4 (2002) (The PLRA "creates 'a general rule of exhaustion' for

25   prisoner civil rights cases.").

26       Compliance with the exhaustion requirement is mandatory for any type of relief sought.

27   Booth v. Churner, 532 U.S. 731, 739, 741 (2001) (holding that prisoners must exhaust their

28   administrative remedies regardless of the relief they seek, i.e., whether injunctive relief or money

damages, even though the latter is unavailable pursuant to the administrative grievance process);

McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam); accord, Jones v. Bock,

549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA

and that unexhausted claims cannot be brought in court."); see also Panaro v. City of North Las

Vegas, 432 F.3d 949, 954 (9th Cir. 2005) (The PLRA "represents a Congressional judgment that

the federal courts may not consider a prisoner's civil rights claim when a remedy was not sought

first in an available administrative grievance procedure.").

     An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion

requirement. Woodford v. Ngo, 548 U.S. 81, 84 (2006). When an inmate's administrative

grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as

"effectively unavailable." Sapp v. Kimbrell, 623 F. 3d 813, 823 (9th Cir. 2010); see also Nunez v.

Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's mistake rendered prisoner's

administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1045 (9th

Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005)

(plaintiff not required to proceed to third level where appeal granted at second level and no

further relief was available).

     Administrative remedies must be exhausted before the complaint is filed. McKinney v.

Carey, 311 F.3d 1198 (9th Cir. 2002), but see Rhodes v. Robinson, 621 F.3d 1002 (9th Cir. 2010)

(PLRA exhaustion requirement satisfied with respect to new claims within an amended or

supplemental complaint so long as administrative remedies are exhausted prior to the filing of the

amended or supplemental complaint).

    E.  Standards Governing the Motion

     The PLRA's exhaustion requirement is not jurisdictional; rather, it creates an affirmative

defense that a defendant may raise in an unenumerated Rule 12(b) motion. See Jones, 549 U.S. at

213–14; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540 U.S. 810 (2003).

The defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315

F.3d at 1119.

     In deciding a motion to dismiss for failure to exhaust, a court may "look beyond the

1    pleadings and decide disputed issues of fact." Id., 315 F.3d at 1119–20.  Thus, the parties may go

2    outside the pleadings, submitting affidavits or declarations under penalty of perjury, but plaintiff

3    must be provided with notice of his opportunity to develop a record.  Id. at 1120 n.14.  In this

4    case, plaintiff was provided with such notice on April 9, 2012 and concurrently with the filing of

5    the motion to dismiss on August 7, 2013.  See ECF Nos. 20 at 3-4, 69, 70.  See Woods v. Carey,

6    684 F.3d 934 (9th Cir. 2012).  If the court determines that plaintiff has failed to exhaust, dismissal

7    without prejudice is the appropriate remedy.  Id. at 1120.

8          F.  The CDCR's Administrative Remedies

9          The State of California provides its prisoners and parolees the right to appeal

10    administratively "any policy, decision, action, condition, or omission by the department or its

11    staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or

12    her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  At the time of the events

13    giving rise to the present action, California prisoners were required to proceed through four

14    separate levels of appeal to exhaust the administrative appeal process: (1) an informal resolution;

15    (2) first formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the

16    institution head or designee, and (4) third level appeal to the Director of the CDCR.  See 15 Cal.

17    Code Regs. § 3084.1- 3084.9.[6]  A final decision from the Director's level of review satisfies the

18    exhaustion requirement under 42 U.S.C. § 1997e(a).  See Lira v. Herrera, 427 F.3d 1164, 1166–

19    67 (9th Cir. 2005); see also Cal. Code Regs. tit. 15, § 3084.7(d)(3) (as amended Dec. 13, 2010).

20          G.  Analysis

21          As an initial matter, the court notes that the parties' briefing and exhibits on the

22    exhaustion question have not meaningfully assisted resolution of this issue.  Plaintiff has merely

23    repeated a strategy that worked for him in another case, attempting to create a factual dispute

24    about the institution's handling of inmate appeals in general.  While it may in some cases be

25    necessary to reach the factual question whether a particular 602 was submitted but "lost" or

26

27    _____
     [6] The informal resolution level has since been eliminated.  See Cal. Code Regs. tit. 15, § 3084.7
     (as amended Dec. 13, 2010).

28

1   destroyed as the prisoner claims, or was never submitted as defendants contend, this is not such a

2   case.  Defendants' failure to file a reply to plaintiff's opposition also made it more complicated

3   than necessary for the court to narrow down the disputed issue.  Furthermore, the use of

4   conclusory affidavits such as that of D. Frazier, which contain more legal conclusions than actual

5   facts, obfuscates the issue rather than clarifying it.  Defendants are cautioned that the use of such

6   affidavits is disfavored by this court.  In an over-burdened jurisdiction such as this court, the

7   filing of inadequately supported motions wastes valuable judicial resources.

8          A review of the relevant exhibits in this case demonstrates that once plaintiff obtained

9   pain medication to manage the discomfort associated with his broken rib, his remaining health

10  care complaint centered on obtaining an actual x-ray of his ribs to determine the extent of his

11  injury.[7]  To this end, plaintiff submitted a health care appeal form on September 29, 2008

12  requesting an x-ray and to see the doctor.  See ECF No. 72 at 105 ("It's been some (85) days

13  since I had my rib(s) broken.  I've still not had my (X ray). . .  I've still not seen the doc.").  This

14  appeal form, assigned Institution Log No. HDP-31-08-16037, sufficed to put prison officials on

15  notice that plaintiff was seeking medical evaluation and treatment for his suspected broken ribs.

16  See Sapp, 623 F.3d at 824 ("A grievance suffices to exhaust a claim if it puts the prison on

17  adequate notice of the problem for which the prisoner seeks redress."); Griffin v. Arpaio, 557

18  F.3d 1117, 1120 (9th Cir. 2009) (grievance satisfies the administrative exhaustion requirement if

19  it "alerts the prison to the nature of the wrong for which redress is sought.").  The appeal was

20  granted at the first formal level of administrative review.  ECF No. 72 at 106.  Plaintiff was

21  provided an x-ray of his ribs on October 24, 2008.  See ECF No. 67-4 at 4.  Therefore, the appeal

22  was resolved to plaintiff's satisfaction and an appeal to the second and third levels of review was

23  not necessary.

24  ////

25  _____

26  [7] Plaintiff acknowledges that he received his ibuprofen on July 12, 2008, five days after his
    injury.  Having received the medication prior to the deadline for appealing its delay, petitioner
27  was not required to file a 602 as to the deprivation.  See Marella v. Terhune, 568 F.3d 1024, 1027
    (9thgiv Cir. 2009) (citing Brown v. Valoff, 422 F.2d at 935) (inmate not required to appeal when
28  relief has already been provided or no further relief is available).

1    In this respect, the present case is comparable to Harvey v. Jordan, 605 F.3d 681, 683-84

2    (9th Cir. 2010).  In Harvey, the Ninth Circuit Court of Appeal determined that an inmate had

3    exhausted his due process claim when prison officials purported to grant relief that resolved his

4    grievance to his satisfaction.  "An inmate has no obligation to appeal from a grant of relief, or a

5    partial grant that satisfies him, in order to exhaust his administrative remedies."  Id. at 685.  That

6    is exactly what happened in the present case.  Plaintiff filed a health care appeal requesting to see

7    the doctor and to obtain an x-ray of his ribs.  He was provided both forms of relief, and was under

8    no obligation to pursue his appeal beyond the first formal level of administrative review in order

9    to satisfy the exhaustion requirement.  The Harvey case disposes of the pending motion to

10   dismiss.

11        Defendants argue that plaintiff failed to exhaust his administrative remedies by failing to

12   name each specific defendant in his administrative appeals.  That exhaustion theory has been

13   squarely rejected by the United States Supreme Court as well as the Ninth Circuit Court of

14   Appeal.  In Sapp v. Kimbrell, the Ninth Circuit found that the inmate plaintiff "was not required

15   to identify [defendant] Peterson by name to exhaust the grievance against him.  Neither the PLRA

16   itself nor the California regulations require an inmate to identify responsible parties or otherwise

17   to signal who ultimately may be sued."  623 F.3d at 824.  See also Jones v. Bock, 549 U.S. 199,

18   217 (2007) (stating that "nothing in the [PLRA] imposes a 'name all defendants' requirement.").

19   The continued use of this legal argument as a basis to seek dismissal of a pro se complaint,

20   without citation to contrary authority, is improper.

21        For these reasons, the undersigned recommends that defendants' motion to dismiss for

22   failure to exhaust administrative remedies be denied.  Defendants have failed to meet their burden

23   of proving the absence of exhaustion.  See Wyatt, 315 F.3d at 1119.

24   IV.    Motion for Summary Judgment

25        A.   Legal Standard

26        Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when

27   it is demonstrated that there exists no genuine issue as to any material fact, and that the moving

28   party is entitled to judgment as a matter of law.  Summary judgment must be entered, "after

10

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the court is to liberally construe the filings and motions of pro se litigants. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ P. 56(e); Matsushita, 475 U.S. at 586 n. 11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the court to consider and/or by specifically referencing any other portions of the record for consideration. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

In deciding a summary judgment motion, the court does not make credibility determinations, weigh conflicting evidence, or draw inferences, as those are functions reserved for the trier of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 255 (1986); see also Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001). Rather, the court considers the evidence in the light most favorable to the non-moving party and accepts the version of disputed facts most favorable to that party. Anderson, 477 U.S. at 255; see Lujan v.

11

1    Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) ("In ruling upon a Rule 56 motion, 'a District

2    Court must resolve any factual issues of controversy in favor of the non-moving party' only in the

3    sense that, where the facts specifically averred by that party contradict facts specifically averred

4    by the movant, the motion must be denied") (citations omitted).   "Where the record taken as a

5    whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

6    issue for trial.'"   Matsushita, 475 U.S. at 587 (1986) (citation omitted); see also Anderson, 477

7    U.S. at 250-251 (summary judgment must be entered in favor of the moving party "if, under the

8    governing law, there can be but one reasonable conclusion as to the verdict"); Celotex, 477 U.S.

9    at 325.   Conversely, "[i]f reasonable minds could differ," the judgment should not be entered.

10   Anderson, 477 U.S. at 250-51.

11       B.   Factual Record

12           As an initial matter, the court notes that both parties' statements of fact refer to events

13   surrounding Officers Hougland and McBride's use of force against plaintiff which led to his

14   injuries on July 7, 2008.   See ECF Nos. 67 at 2-3, 72 at 75-76.   As there is pending litigation

15   concerning whether this use of force was excessive in violation of the Eighth Amendment, these

16   underlying facts will not be reviewed by the court at this time.   The only facts relevant to the

17   pending motion for summary judgment are those concerning plaintiff's medical evaluation and

18   treatment following the use of force.[8]

19       1.   Undisputed Facts

20           The following facts are undisputed:[9]

21   •   Plaintiff was in the custody of the California Department of Corrections and

22       Rehabilitation (CDCR) and was incarcerated at High Desert State Prison at all times

23       relevant to the complaint. ECF No. 67 at 1.

24   •   Defendants Clark, Smith, Thompson, and Goulding were employed by the CDCR and

25       held the following positions at HDSP at all times material to the matters at issue:  S. Clark

26   _____

27   [8] For this same reason, plaintiff's statement for the record, ECF No. 71, disputing the accuracy of
     the official report of the use of force against him is not relevant to the motions before the court.
     [9] Although plaintiff characterizes some of these facts as disputed, there is no conflicting evidence
28   on these points.

was a Licensed Vocational Nurse (LVN); J. Smith was a Correctional Officer; A. Thompson was a Correctional Sergeant, and L. Goulding was a member of the "medical staff." ECF No. 1 at 2-3.

- Defendant Clark medically evaluated Sergeant Hougland, Officer McBride and plaintiff following the officers' use of force against plaintiff on July 7, 2008. ECF No. 67-1 at 41.

- Defendant Clark noted Sergeant Hougland's injuries as an abrasion, scratch, and active bleeding and redness to his left knee. Id.

- At approximately 7:50 p.m., Lieutenant Lewis notified Hubbard of his placement in administrative segregation and gave him a copy of the placement notice.[10] ECF No. 67-1 at 33.

- Due to the injury to plaintiff's forehead, which could be considered to be either serious or great bodily injury, staff was required to conduct a use of force interview with inmate Hubbard. See Cal. Code Regs. tit. 15, § 3268.1(d)(1)).

- During the videotaped interview, plaintiff stated that he believed his rib was cracked or broken, but he did not request immediate medical treatment, or to be brought to the medical clinic.[11] ECF No. 67-3 at 2.

- An inmate housed in administrative segregation is allowed to keep medication that is to be taken as needed. ECF No. 67-10 at 4.

- Prior to the events of July 7, 2008, plaintiff had a recurring prescription for 800 m.g. ibuprofen tablets to be taken as necessary.[12] See ECF No. 67-5 at 1-46 (medication administration records).

---

[10] Plaintiff disputes the time at which this occurred. See ECF No. 72 at 78. The time at which this occurred is not material. Therefore, the court considers this as an undisputed fact.

[11] This is undisputed based on the court's review of the videotape itself. See ECF No. 67-3 at 2.

[12] Plaintiff does not dispute the fact that he was prescribed ibuprofen. ECF No. 72 at 80. He contends that the defendants' evidence does not demonstrate when he was allowed to have them in his possession after he was transferred to ad-seg. However, plaintiff acknowledged in his complaint that his former cellie had placed all of his carry meds including his ibuprofen out to the side of his property when plaintiff observed it in the program office before he was transferred to ad-seg. ECF No. 1 at 5. Therefore, the court finds that there is no dispute that plaintiff's medication was included in his property that was transferred to administrative segregation.

13

- Because administrative segregation houses those inmates deemed more dangerous than inmates in the general population, rigid control is maintained on the type and quantity of personal property that is allowed.  ECF Nos. 67-10 at 6-7.
- On July 9, 2008, plaintiff submitted a sick call slip requesting a refill of his "carry meds (Ibuprofen) [sic] 800 mg and the heart burn meds."  He also indicated that he might have a cracked or broken rib(s).  ECF No. 67-4 at 22.
- The request was received by the medical department on July 10, 2008, and plaintiff was seen on July 11, 2008 at 8:30 a.m.  ECF No. 67-4 at 22.
- The nurse noted that plaintiff's vital signs were normal, his respiration was even and unlabored, and his skin was pink.  Plaintiff's rib was tender upon palpation, but his ribs felt intact.  Plaintiff's prescription for 800 m.g. ibuprofen tablets was re-ordered that day.[13]  ECF No. 67-4 at 22.
- Plaintiff was instructed to continue taking his prescribed medications for pain, and to follow-up with the doctor for further evaluation.  In addition, plaintiff was told to notify custody staff if he developed shortness of breath or if his pain increased.[14]  ECF No. 67-4 at 22.
- On July 14, 2008, plaintiff again submitted a sick call slip claiming that he had cracked or broken ribs that made it difficult to breathe at times, and caused pain when he moved, bent, lay down, slept, or "push"[ed] while on the toilet.  The request was received on the same day, and reviewed by the nurse on July 15, 2008.  Plaintiff was referred to triage. ECF No. 67-4 at 21.
- On July 16, 2008, plaintiff submitted another sick call slip, this time noting that it was a third request, and again stating that he was in pain.  The request was received the same day, and reviewed by the nurse on July 21, 2008.  This request was also referred to triage.

---

[13] Although plaintiff disputes that he actually received the prescription ibuprofen on July 11, 2008, there is no dispute that the prescription was re-ordered on that date by medical staff.

[14] To the extent that plaintiff alleges that the medical record does not accurately reflect his statements concerning how he was injured and the extent of his injuries, this does not dispute the medical advice he was provided during this July 11, 2008 visit.

ECF No. 67-4 at 20.

- On August 5, 2008 plaintiff saw Dr. French.  During this visit, plaintiff complained that he had rib pain for the past three and a half weeks and that he had problems sleeping on his side.  Palpation of plaintiff's ribcage area showed no sign of redness or swelling.  The doctor ordered a series of rib x-rays and advised plaintiff to continue with his 800 m.g. Motrin.  ECF No. 67-4 at 16-17.

- Plaintiff's ribs were x-rayed on October 24, 2008, and showed a fracture of the eighth rib. ECF No. 67-4 at 4.

- Generally, the only treatment for a fractured rib is a prescription for an anti-inflammatory, such as Motrin.  A nonsteroidal anti-inflammatory drug (NSAID) such as Motrin, which plaintiff was taking, is consistent with the standard of care for treating a broken rib, and no additional treatment is indicated unless the patient has trouble with respiration.[15]  ECF No. 67-8 at 3.

- The medical staff who treated plaintiff always found his respiration to be normal.[16]  ECF No. 67-4.

- Inmates can receive accommodation chromos that are medically necessary or are required under the American's with Disabilities Act.  ECF No. 67-7.

- It is the inmate's primary care physician (PCP) who determines whether an inmate requires a temporary or permanent accommodation due to the inmate's medical condition. The physician completes a Comprehensive Accommodation Chrono, CDCR Form 7410, indicating whether the accommodation is permanent or temporary.  This form acts as a physician's order.  ECF Nos. 67-7 at 2.

- When ordering an extra mattress as an accommodation for an inmate, the primary care

---

[15] Plaintiff does not dispute the standard of care for treating a broken rib.  See ECF No. 72 at 83. Instead, he contends that his fractured rib made him eligible for a temporary accommodation chrono authorizing an extra mattress and pillow to help alleviate the pain caused by the injury. Id.

[16] The only dispute that plaintiff has with this fact is the accuracy of the statements that he made to medical personnel.  He does not dispute the findings made by medical staff.  Accordingly, the court deems this fact undisputed.

physician utilizes, but is not limited to the following criteria:  (1) body mass index (BMI) greater than or equal to 40; (2) recent back or neck surgery; (3) severe degenerative joint/disc disease documented radiographically; (4) severe musculoskeletal deformities; or (5) the presence of hip prosthesis with associated pain.  ECF Nos. 67-7 at 4.

- When ordering an extra pillow or wedge as an accommodation for an inmate, the primary care physician utilizes, but is not limited to the following criteria:  (1) symptomatic gastroesophageal reflux; (2) congestive heart failure; (3) chronic obstructive pulmonary disease; (4) severe cervical degenerative joint disease; (5) chronic severe lower back pain with severe degenerative joint or disc disease; (6) hip prosthesis; or (7) acute injuries. ECF Nos. 67-7 at 4.

- Health care appliances or medical support equipment, such as a second mattress or pillow that have been prescribed for the inmate by his treating physician, are approved by the Correctional Captain and Health Care Manager, or their respective designees.  ECF Nos. 67-7 at 2.

- Plaintiff's primary care physician did not order an accommodation for either an extra mattress or pillow.  ECF Nos. 67-4 (medical records).

2.  <u>Disputed Facts</u>

- Plaintiff disputes the specific time that defendant McBride was evaluated by defendant Clark on July 7, 2008.  ECF No. 72 at 76.  He alleges that the official reports were falsified because the incident report prepared by Officer McBride does not match with defendant Clark's medical report.  <u>Id.</u>  Plaintiff raises this same contention with respect to defendant Clark's observations of defendant McBride's injuries.  ECF No. 72 at 77.  The time and extent of defendant McBride's medical treatment is not relevant to the legal issue before the court.  This dispute is simply not material to whether plaintiff was subjected to deliberate indifference to a serious medical need.  The court will therefore not consider these facts in disposing of the motion for summary judgment.

a.  <u>Medical Evaluation by Defendant Clark</u>

- Plaintiff contends that defendant Clark falsified the CDCR form 7219 Medical Report of

16

Injuries or Unusual Occurrence by not noting all of his injuries and that she deliberately omitted all of the facts and was fully aware of his severe pain and discomfort.  ECF No. 72 at 77-78.  He points to the evidence of the chest x-ray conducted on October 24, 2008 finding that one of his ribs was fractured to illustrate the severity of his injuries which defendant Clark failed to document.  Id. at 78; ECF No. 67-4 at 4 (x-ray).  In his complaint, plaintiff stated under penalty of perjury that he "immediately informed the nurse that Sgt. Hougland had deliberately broken my rib(s)…and that [he] was in severe pain and requested medical attention."  ECF No. 1 at 4.

- Defendants contend that Nurse Clark followed procedures and documented plaintiff's injuries and assessed whether he needed additional medical or mental health treatment.  ECF No. 67-4 at 22.  Defendant Clark noted that plaintiff's injuries were minor, and included an abrasion and dried blood on his forehead and elbow, and pain to his midsection.  Id.  Plaintiff refused to tell defendant Clark how he received his injuries.  Id.  At no time did defendant Clark notice that Sergeant Hougland was motioning in any way, and even if Hougland had done so, it would not have interfered with her assessment and treatment of plaintiff.  ECF No. 67-2 at 3.  Defendant Clark did not believe that plaintiff's injuries required emergent care, and she cleared him for placement in administrative segregation.  ECF No. 67-2 at 3.

    b.  Medication Administration

- Defendants contend that when seen by medical staff on July 11, 2008, plaintiff stated that his pain was a "6" on a scale of 1 through 10 but that his ibuprofen was helping a little bit to control the pain.  ECF No. 67-4 at 22.

- Plaintiff contends that the medical record describing his treatment on July 11, 2008 is false because he did not tell the nurse at the sick call on July 11, 2008 that his "ibuprofen was helping a little bit to control the pain."  ECF No. 72 at 80.  However, nowhere in plaintiff's complaint nor in either of his affidavits submitted in opposition to defendants' motion, does plaintiff make this statement under oath.  Compare ECF No. 1 with Exhibits #1, 17.

1      • Plaintiff stated under oath in his complaint that he did not actually receive the ibuprofen

2          that was prescribed for his pain until July 12, 2008, one day after he was seen by the nurse

3          and five days after he was originally injured.  ECF No. 1 at 8.

4              c. Doctor Visit of August 5, 2008

5      • Plaintiff disputes telling Dr. French that he sustained the injury to his ribs in a fall and that

6          his breathing had improved a lot.  ECF No. 72 at 82.  He also contends that he informed

7          Dr. French that he suffered shortness of breath and dizziness.  Id.  However, nowhere in

8          plaintiff's verified complaint or in either of his affidavits does plaintiff make this

9          statement under oath.  See ECF No. 1, and Exhibits #1, 17.

10             d. Medical Visit with Defendant Goulding

11     • Defendants contend that defendant Goulding was not authorized to order an

12         accommodation for an extra mattress or pillow.  ECF No. 67-7.

13     • Plaintiff contends that defendant Goulding had a duty and an obligation to refer him to a

14         physician who could authorize the accommodation chrono for an extra mattress and

15         pillow.  ECF No. 1 at 8.

16     • Plaintiff contends that defendant Goulding deferred plaintiff's request to custody staff

17         rather than a medical doctor.  ECF No. 1 at 8.

18     C. Eighth Amendment Claim

19         1. Governing Legal Principles

20     "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

21 must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091,

22 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  The two part test for

23 deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by

24 demonstrating that 'failure to treat a prisoner's condition could result in further significant injury

25 or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need

26 was deliberately indifferent."  Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050,

27 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133,

28 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  The existence of an injury that a

reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.  McGuckin, 974 F.2d at 1059-1060.

A prison official is deliberately indifferent if she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer, 511 U.S. at 837.  A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety.  Id.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and have actually drawn the inference.  Id.  If a prison official should have been aware of the risk, but was not, the official has not violated the Eighth Amendment, no matter how severe the risk.  Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

In order for deliberate indifference to be established, there must be a purposeful act or failure to act on the part of the defendant and resulting harm.  See McGuckin, 974 F.2d at 1060. A claim of mere negligence or harassment related to medical problems is not enough to make out a violation of the Eighth Amendment.  Gibson, 290 F.3d at 1188; see also Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in claims stemming from alleged delays in administering pain medication, treating broken nose and providing replacement crutch, because claims did not amount to more than negligence); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain).

2.      Analysis

a.      Objective Component:  Seriousness of Medical Need

Accepting the facts in plaintiff's complaint and affidavits as true, and drawing all

1  reasonable inferences in his favor as the nonmoving party, there is no evidence that the delay in

2  receiving pain medication and an x-ray caused plaintiff further significant injury.  The only

3  evidence concerning the medical standard of care for treating a rib fracture demonstrates that

4  prescribing plaintiff with pain medication and allowing his fracture to heal over time was the

5  appropriate course of treatment and was followed in this case.  Therefore, the only remaining

6  legal question is whether the delay in plaintiff's medical treatment resulted in the unnecessary and

7  wanton infliction of pain which could establish a serious medical need for Eighth Amendment

8  purposes.  The answer to this question is found in reviewing the evidence concerning the

9  administration of plaintiff's pain medication.

10  Plaintiff had a pre-existing prescription for 800 m.g. ibuprofen tablets prior to the injury at

11  issue in this case.  Plaintiff took this medication as needed.  Plaintiff was seen on multiple

12  occasions by medical staff following his July 7, 2008 injury and none of the medical providers

13  provided any pain medication stronger than what plaintiff was already prescribed.  Plaintiff did

14  not produce any evidence that stronger pain medication was warranted based on the extent of his

15  injury.

16  With that in mind, the court turns to the issue of plaintiff's access to this medication.

17  Plaintiff's own evidence establishes that his carry meds including ibuprofen were packed up in

18  his property which was transferred to ad-seg.  Additionally, there is no dispute that an inmate

19  housed in administrate segregation is allowed to keep medication that is to be taken as needed.

20  The only fact in dispute is the length of time it took for plaintiff to gain access to his carry meds

21  once he arrived in ad-seg.  Even assuming that there was a five day delay in receiving the

22  prescribed ibuprofen, however, no rational trier of fact could conclude on this record that such a

23  delay risked "unnecessary and wanton infliction of pain."  See Jett, 439 F.3d at 1096.

24  Accordingly, there is no material dispute of fact regarding the existence of a serious medical

25  condition within the meaning of the Eighth Amendment.  See id.  For this reason, the undersigned

26  recommends granting defendant's motion for summary judgment on the Eighth Amendment

27  claim for deliberate indifference to his medical needs with respect to Defendants Clark,

28  Thompson, and Smith.

1

    b.  Defendant Goulding

2        The only allegation involving Defendant Goulding is that she failed to ensure that plaintiff

3   was provided an extra mattress and pillow as an accommodation for his injury.  The evidence on

4   this point demonstrates that even when seen by a doctor who was authorized to provide a

5   temporary accommodation, one was not ordered as being medically necessary.  The CDCR

6   criteria concerning an accommodation for an extra mattress and pillow demonstrate that the

7   medical conditions which require these to be provided are extremely limited.  See Defendants'

8   Exhibit E.  Plaintiff does not provide any evidence by affidavit or otherwise demonstrating how

9   his medical condition was serious enough to justify such an accommodation.  Plaintiff's desire for

10  additional measures that would provide him greater comfort while his rib fracture healed does not

11  rise to the level of a constitutional violation.  Accordingly, Defendant Goulding is entitled to

12  judgment as a matter of law on plaintiff's Eighth Amendment claim.

13

    c.  Conclusion

14       Because the undersigned finds that plaintiff has not raised a triable issue that he had a

15  serious medical need, there is no need to reach the issue of whether plaintiff could have shown a

16  genuine issue of fact with respect to whether defendants were deliberately indifferent.  For the

17  same reason, the undersigned does not reach the question of qualified immunity raised by

18  defendants as an alternative basis for summary judgment.

19   D.  Conspiracy Claim

20     1.  Governing Legal Principles

21       In the context of conspiracy claims brought pursuant to section 1983, a complaint must

22  "allege [some] facts to support the existence of a conspiracy among the defendants."  Buckey v.

23  County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim–Panahi v. Los Angeles Police

24  Department, 839 F.2d 621, 626 (9th Cir. 1988).  Plaintiff must allege that defendants conspired or

25  acted jointly in concert and that some overt act was done in furtherance of the conspiracy.  Sykes

26  v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

27       A conspiracy claim brought under section 1983 requires proof of "'an agreement or

28  meeting of the minds to violate constitutional rights,'"  Franklin v. Fox, 312 F.3d 423, 441 (9th

1   Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–

2   41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v.

3   Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma,

4   866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not

5   know the exact details of the plan, but each participant must at least share the common objective

6   of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

7           2.   Analysis

8           Plaintiff has produced no evidence of an agreement between Defendant Clark and

9   Sergeant Hougland to deny him medical care for his injuries.  In his complaint, plaintiff stated

10  that he observed Sergeant Hougland nod his head no while plaintiff was being evaluated by

11  Defendant Clark.  However, in her affidavit, Defendant Clark denied seeing Sergeant Hougland

12  make any gesture to her while she was examining plaintiff, and, that even if he did, this would not

13  affect her medical decision making.  Based on this evidence, a rational trier of fact could not find

14  any agreement between Sergeant Hougland and Defendant Clark to support a conspiracy claim.

15  See Matsushita, 475 U.S. at 587.  Even accepting accordingly, summary judgment is warranted

16  with respect to defendant Clark.

17          The evidence of a conspiracy between Sergeant Hougland and the remaining defendants is

18  even weaker.  Plaintiff has produced no evidence of joint action, much less an agreement,

19  between Sergeant Hougland and Defendants Smith and Goulding.  Defendant Thompson merely

20  told plaintiff to discuss his medical condition directly with Sergeant Hougland.  These defendants

21  are therefore entitled to judgment as a matter of law on plaintiff's conspiracy claim.

22          IT IS HEREBY ORDERED that:

23          1.  Plaintiff's motion to compel (ECF No. 73) is denied as untimely; and,

24          2.  Plaintiff's motion to electronically file all pleadings pursuant to Local Rule 133(b)(2)

25  is granted.  ECF No. 43.

26          IT IS HEREBY RECOMMENDED that:

27          1.  Defendants' motion to dismiss based on failure to exhaust administrative remedies

28  (ECF No. 66) be denied; and,

1    2.  Defendants' alternative motion for summary judgment (ECF No. 66) be granted with

2    respect to all defendants.

3    These findings and recommendations are submitted to the United States District Judge

4    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

5    after being served with these findings and recommendations, any party may file written

6    objections with the court and serve a copy on all parties.  Such a document should be captioned

7    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

8    objections shall be served and filed within fourteen days after service of the objections.  Due to

9    the exigencies of the court's calendar, there will be NO EXTENSIONS OF TIME GRANTED in

10   which to file objections.  The parties are advised that failure to file objections within the specified

11   time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153

12   (9th Cir. 1991).

13   DATED: February 6, 2014

14   _____
     ALLISON CLAIRE
15   UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28